**Oral Argument has Not Been Scheduled**

# Case No. 12-5178

_____

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

_____

**Venkareddy Chennareddy, et al**
**For themselves and All others similarly situated**
**Appellants**
**V.**
**Gene Dodaro,**
**Comptroller General of the United States**
**Government Accountability Office (GAO)**
**Appellee**

_____

### APPEAL FROM FINAL ORDERS OF THE
### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

# BRIEF FOR APPELLANTS

**Walter T. Charlton and Associates**
**11213 Angus Way**
**Woodsboro, Maryland 21798**
**Counsel for the 12 Appellant Putative Class Representatives**
**And the Class of about 7000 Similarly Situated Employees/ Former**
**Employees They Seek to Represent**

**CERTIFICATE AS TO PARTIES,**
**RULINGS, AND RELATED CASES**

## A. Parties and Amici

For purposes of recusal, this putative class action is a follow-on to the remand of *Chennareddy v. Bowsher*, 935 F.2d 315, case Numbers _89-cv-5408, 89-cv-5409 (D.C. Cir, 1991) whereby this Court reversed the dismissals for alleged but incorrect failure to exhaust administrative remedies. Appellants estimate about 1500 victims will constitute the punitive class. A plaintiffs and the prospective class are present or former employees of the Appellee Federal Legislative Branch Agency, the United States Accountability Office (GAO).

The accompanying case, *James D. Moses, et al Appellants v. Gene Dodaro, Comptroller General of the United States*, Case No.,12-5199, USDC Case No. 1:06-cv-1712(RCL)(*Moses)* alleges that Moses's about 90 putative class members are also members of the instant putative class(es) in this action for certain overlapping years. Dr. Chennareddy retired January 3, 2006.

The present named defendant herein is the present Comptroller General of the United States, (CG) Gene Dodaro. Over the span of this case the preceding party/ Defendants were the former Comptrollers General of the United States, Charles Bowsher, and David M. Walker. During the relevant times herein, the present Controller General, Mr. Dodaro, was the chief assistant to the Comptroller,

then the Acting Comptroller, and finally has now been appointed Comptroller

General of the United States.

Plaintiffs and applicant intervenors in the District Court were or are:

**B.  Named Plaintiffs, Applicant Intervenors, and Putative Class Members, or Amici, Active in this Class Litigation:**

**Twelve of the Named Plaintiff/Appellants/Putative Class Representatives are:**

Dr. Venkareddy Chennareddy, Sandra Thibault, Roger Carroll, Hector

Rojas, an unnamed GS-15 Employee of the United States General Accounting

Office-Clark Adams, Jagdish C. Narang, Eugene A. Ramey, Henry Q. Jeong, The

Estate of William A. Mullen, James B. Dowd, Louis Lucas, and Vincent DeSanti.

**C.    2 Related Case Plaintiff/Appellants who moved to intervene before filing a related case are:**

James D. Moses and Robert W. Wagner, Jr.  Mr. Moses and Mr. Wagner are

alleged to have been members of the putative Chennareddy et al class, since about

January 1, 2000,

**D.  12  Movant- Applicant Intervenors whose Motions to Intervene (in Lieu of Class Certification) were Denied Are:**

Mike Ross, Amy Hutner, Rudolf Plessing, George Cullen, Ernest Arciello,

Mike Jones, Phil Andres, Jerry Aiello, James Moore, Brenda Trotter, Edna

Saltzman, and Garry Roemer.

**E. Putative Class Members-Identities:**

Federal Rule of Civil Procedure 23-Putative Class Members:

The putative class definition is contained in Paragraph 130 of the Sixth Amended complaint (Apx.[1],ECF #, Pg.___).  Approximately 1500 former employees who were evaluators or evaluator support professionals during the years 1983 through 2015 are expected to be identified as members of the putative class if the readily available identification criteria are ordered produced by the GAO in subsequent litigation.

**F. Plaintiffs' Brief– Requirements of Rule 28**(a):

There are no relevant corporate affiliations to the knowledge of Appellants.

---

[1] "Apx."  Denotes reference to the Joint Appendix to the Record.

# Table of Contents

CERTIFICATE AS TO PARTIES,
RULINGS, AND RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . . . . -i-

Parties and Amici.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -i-

Named Plaintiffs, Applicant Intervenors, and Putative Class Members, or Amici,
Active in this Class Litigation:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

2 Related Case Plaintiff/Appellants who moved to intervene before filing a related
case are:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

12  Movant- Applicant Intervenors whose Motions to Intervene (in Lieu of Class
Certification) were Denied Are:. . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

Putative Class Members-Identities:.. . . . . . . . . . . . . . . . . . . . . . . . . . . . -iii-

Plaintiffs' Brief– Requirements of Rule 28(a):.. . . . . . . . . . . . . . . . . . . . . -iii-

**Table of Contents**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iv-

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -viii-

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -x-

STATEMENT OF ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . -xi-

**Rulings Under Review**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -xii-

Unusual Reasons Why Normally Routine Rulings Are Disputed Herein:.. . . . -xiii-

Table Of Rulings For Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -xiv-

Related Cases and Prior Rulings of the Court (1079-1983 and 1991):. . . . . . . -xx-

**I. STATEMENT OF THE CASE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

A.  Bona-Fides of this Complaint and Appeal. . . . . . . . . . . . . . . . . . . . . . -1-

B.  Age Discrimination-History and Nature of This Putative Class Action. . . . .  -3-

C.  Genesis of this Case, Related Employment Discrimination Cases (1979-1983)
      and Prior Ruling of the Court Herein (in 1991):. . . . . . . . . . . . . . . . . . .  -5-

D. The Quota System:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -8-

E. Details of the District Court's Decisions and GAO/DOJ's
      Abuse of Meaningful Discovery:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -10-

F. Belated Discovery of Withholding of Discoverable Evidence:. . . . . . . . . . .  -14-

G. The Revelations:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -15-

H. Prior Litigation in this Court:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -17-

I. Procedural Errors of the Court-Later Years:. . . . . . . . . . . . . . . . . . . . . . . .  -18-

J. The District Court Erred in Application of Discovery Standards:. . . . . . . . .  -20-

K. Judge Penn's Final Ruling, Granting Belated Discovery On the Frauds  Was
      Swept Under the Judicial Rug:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -21-

Docket Entry 330, 03/14/2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -22-

L. Overall Appealable Result:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -22-

II.  STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -23-

Non-Responsive Discovery by GAO:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -25-

Practicalities of Early Data Production (pre-1989):. . . . . . . . . . . . . . . . . . . . .  -26-

Analysis Performed on Raw Unedited Data Produced:. . . . . . . . . . . . . . . . . .  -26-

Dr. Lurito's opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -28-

FIGURE 1-Promotion Rates By Age. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -31-

Existing Anecdotal Evidence Mirrors
    the Incomplete Statistical Data Produced:. . . . . . . . . . . . . . . . . . . . . . . -32-

Appellant/Plaintiffs' Initial set of Interrogatories -Excerpts
    October 1989, Set I, Interrogatories 1-16; Production of Data. . . -34-

Withheld System I
    Promotion Control with Enforced Quotas:. . . . . . . . . . . . . . . . . . . . . . -36-

Chart 1-Promotion Control System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -38-

System II-William R. Mowbray's GAO
    SAS Electronic Database Reporting System. . . . . . . . . . . . . . . . -41-

The Bob Mowbray GAO
    SAS-Personnel Database Analysis and Reporting System.. . . . . . . . . . . -45-

DOJ/ GAO Dissembling Regarding Withheld Evidence. . . . . . . . . . . . . . . . -46-

The Utility of the Evidence Contained in the Mowbray Dynamic
    Data Processing System and Its Relevance to Plaintiff's Case. . . . . . . . -48-

GAO's Class Certification Objections Are Vitiated,  i.e. Actually Impeached
    By the Withheld Personnel Electronic Evidence.. . . . . . . . . . . . . . . . . . -50-

IV.  STANDARD OF REVIEW TO BE APPLIED
    BY THE COURT IN ITS DETERMINATIONS. . . . . . . . . . . . . . . . . . . -52-

V.  SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -54-

VI.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -57-

A.  The District Court Abused its Power And/or Discretion, And/or Plainly Erred
    in Factual Determinations in the Face of Demonstrated Fraud upon the
    Court; by Ordering Plaintiffs to Eliminate Pattern and Practice Claims per
    *Teamsters;* and Class Action Claims from Their 5th, Amended Complaint,
    and Thereafter Dismissing the 6th, Amended Complaint for Failure to State a
    Claim.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -57-

B. Whether the Impeachment Evidence, Even as Presented in Only Summary
    Form, Refutes Any Rational or Reasonable Basis for the District Court's
    Stated Reasons for Dismissal of Class Pattern and Practice and Class
    Claims:.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -60-

C. The District Court Abused its Discretion in Denying Any Confrontational
    Hearing to Determine Clearly Disputed Facts:.. . . . . . . . . . . . . . . . . . . .  -64-

VII.  CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -65-

CERTIFICATE OF COMPLIANCE PURSUANT
    TO COURT RULE 28.1 (e)(2) and (3).. . . . . . . . . . . . . . . . . . . . . . . . .  -67-

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -68-

Table of Authorities

| Statutes | Page |
|---|---|

28 U.S.C. §§ 1291 and 1292 …………………………...................... xi

Age Discrimination in Employment Act of 1967,
as Amended (ADEA), 29 U.S.C. § 629– 633 et seq ………………… . xi

[2]      CASES

*      Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937,
1949-50, 173 L. Ed.2d 868 (2009) .......…………………………… 21

*      Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955,
167 Led. 2d 929 (2007) ...............……………………….. ….. . . 21

*      Connolly v Gibson, 355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . ... . . . 21

*      Chennareddy, et al v. Bowsher, 935 F.2d 315, Case Numbers
89-cv-5408, 89-cv-5409 (D.C. Cir, 1991)……… . . . .….…… .  i, x, xxi,18

Elmore v. Ozmint, 661 /f.3d 783 (4th Cir.2011)……………………. .53

James D. Moses, et al, v. Gene Dodaro Appeal No. 12-5199,
USDC case No. 06-CV-1712    ...……………………………...… . i, xxii

Kyles v. Whitley, 514U.S. 419, 433-34, 115 S. Ct. 1555,
131 L. Ed. 2d 490 (1995) ……………………………. . . . . . . . . . . . . 53

*Lepkowski v. U.S. Dept of Treasury* 804 F.2nd 1310,
1313-14D.C. Cir 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

*      McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . ……………58

---

*DENOTES CASES OR AUTHORITIES PRINCIPALLY RELIED UPON..-i-

\*       Otha Miller, Nissley et al v. Staats, 706 F2d 336, 31 Fair Empl.
        Prac. Case. 976, 31Empl.Prac.Dec.P 33,559, US App. D.C. 299 (1983),
        (D.C. Civil Action No. 73-00996)(L.O.) . . . . . . . . . . . . . . . . . .. . . ..   xx, 6

\*       Segar  v. Smith, 738 F.2d 1249, 1267 (D. C. Cir.1984)   . . . . . . . . . . . . .53

\*       Teamsters v. United States, 431 U.S. 324 (1977). . . . . . . . ............... . . 4, 58

        Vant Leven et al v. Walker, USDC DC Case No. 00-2686 . . . . . . . . . . .14, 15


Federal Rules of Civil Procedure

\*Federal Rule of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 33

\*F.R.Civ. P. 26(e)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 23

Federal Rules of Civil procedure 34 . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . .42

Rules of the District of Columbia Circuit

Circuit Court Rule 28 (a) . . . . ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Circuit Court Rule 28 (b). . . . ... . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xiii

4 C.V.R. Sec. 28.5( c)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxii

# JURISDICTIONAL STATEMENT

(A) Subject Matter Jurisdiction: Subject Matter herein is based upon a federal employee's right to sue for employment discrimination using age as a determining factor, Age Discrimination in Employment Act of 1967, as Amended (ADEA), 29 U.S.C. § 633a et seq., as amended.

(B) This Court, in 1991, determined jurisdiction existed in this case. Therefore, that question is Res Judicata.  Chennareddy I, *Venkareddy Chennareddy, General Class Complainant*  Representing Himself and All Others Similarly Situated, et al., Appellants v. *Charles Bowsher*, Comptroller General, Appellee, 935 F.2d 315, 320, 56 Fair Empl. Prac. Case. 127, 56 Empl. Prac. Dec. P 40,846, 290 U. S. App. D.C. 149, (D.C. Circuit, 1991-- as reversed and remanded to the District Court (the instant case as expanded and consolidated).

Upon remand, by final order dated March 30, 2012, the District Court dismissed all claims.  Plaintiffs timely noted their appeal of all Orders, both interlocutory, final and denying class certification as entirely misdirected and tainted by government agency misconduct (see *Lepkowski v. U.S. Dept of Treasury* 804 F.2nd 1310,1313-14D.C. Cir 1986).  The final order of dismissal was timely filed within 60 days of the final District Court Order on May 30, 2012 (Docket #

479).

&copy; Appellate Jurisdiction is based upon appeal of a final order(s) of a United States District Court (Apx.____), and prior interlocutory orders issued relevant to the denial of Plaintiffs and putative class members rights, 28 U.S.C. §§ 1291 (final decisions and 1292 -interlocutory decisions- See table following) (Apx._) of the District Court for the District of Columbia.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

A. Whether, the District Court Abused its Power And/or Discretion, And/or Plainly Erred in Factual Determinations in the Face of Demonstrated Fraud upon the Court; by Ordering Plaintiffs to Eliminate Pattern and Practice Claims per *Teamsters;* and Class Action Claims from Their 5th, Amended Complaint, and Thereafter Dismissing the 6th, Amended Complaint for Failure to State a Claim


B. Whether Impeachment Evidence of Record Refutes Any Rational or Reasonable Basis for the District Court's Stated Reasons for Dismissal of Class Pattern and Practice and Class Claims:


C. Whether the District Court Abused its Discretion in Denying Any Confrontational Hearing Necessary to Adequately Determine Factual Disputes

Regarding Electronic Evidence Allegedly Withheld:

D.  Whether the Abuses of Discretion under These Facts Rose to the Level of Denial of Due Process of Law, or the Rule of Law Itself.

### **Rulings Under Review**

**Explanatory Note (1)**  Plaintiffs are appealing all interlocutory and final decisions of the District Court in this case (Apx. Vol. I). Review of the disputed Rulings include the initial and all subsequent denials of class certification, as well as denials of hearing on vigorously disputed facts.  All such rulings were in the absence of any confrontational evidentiary hearing or trial, that is, entirely on the submission of the parties without the opportunity to challenge false statements. This procedure is also challenged as a denial of due process of law, particularly in light of the massive deception practiced upon the District Court by DOJ/GAO. Pursuant to Circuit Court Rule 28 (b) the following listing of the Orders on review, as well as the failures of the District Court to hold hearings and issue Orders Compelling production of DOJ/GAO withheld evidence follow in Table Form:

**Explanatory Note (2):**

**Unusual Reasons Why Normally Routine Rulings Are Disputed Herein:**

Each of the disputed rulings contained in the Table Of Rulings (following) were all, at least to some extent, factually erroneous. The District Court's Orders were unarguably tainted from the very beginning of this case by allegedly withheld evidence. GAO failed to disclose the existence of an entire electronic management reporting system on the key personnel matters affecting determination of the putative class and the Rule 23 class certification prerequisites.

Of the approximate 105 data fields for each employee, 71 were omitted along with the existence of the database system itself (ECF Doc. # 436, pgs 362-377, and Wm. Robert Mowbray deposition(s) Exhibits, 1-9, pgs 1-36, 4A(2)-5, pages 1-37 and Exhibits 10-21, pages 1-34)(Apx. Pgs.___).

The factual record of this case is sufficiently flawed to preclude a separation of disputed orders from routine orders that conceivably had an adverse result due to the flawed record. For this reason all orders are effectively challenged as necessary to be reviewed. Obviously the standard of review for evidentiary matters apply to all decisions challenged.

## Table Of Rulings For Review

| Date | Judge | Docket Entry # | Summary of Order Listed | Appx. Page # |
|------|-------|----------------|-------------------------|--------------|
| 8/2/1989 | Penn | 34 | Grants motion to extend discovery production time. (Enabling GAO to furnish answers to 1st set of interrogatories beyond cut-off of pre-certification discovery.) | Vol. 1 |
| 8/5/1991 | | 47 | Judgment Court of Appeals reversing Prior Dismissal *Chennareddy v. Bowsher*, 935 F.2d 315, (C.A.D.C., 1991) | |
| 10/21/1991 | Penn | 51 | Pre Certification Discovery Ordered through suspension of Rule 203(b) per motion on Docket Entry 50. | |
| 8/11/1992 | Penn | 88 | Partially grants motion to compel discovery consistent with Burns ruling | |
| 12/23/1992 | Penn | 135 | Order denying Plaintiff's motion to compel answers to interrogatories, protective order, default judgment. Granted Defendant motion remove compensatory damages from complaint and denied Jury trial demanded by Plaintiffs. | |
| 12/30/1992 | Penn | 136 | Memorandum to 135 | |
| 3/22/1993 | Penn | 144 | Order Granting Extension of Time for Pre-Certification Discovery, for Responses by Plaintiffs to Defendants Discovery. | |
| 4/2/1993 | Penn | 146 | Order pre-certification discovery is expanded to 4/14/93 [145-1] for purposes of allowing Plaintiffs to propound and receive responses to Plaintiffs' sixth discovery set. | |

| 8/4/1993 | Penn | 149 | Order granting motion to extend time to 8/6/93 to file Defendant second set of discovery requests | |
| 12/28/1993 | Penn | 179 | Order denying Plaintiff's motion for restraining order | |
| 2/18/1994 | Penn | 190 | Order allowing pre cert discovery to be extended to 4-18-94 and rescheduling status conference for class certification and discovery matters. | |
| 3/20/1995 | N/A | 202 | Initial Order and memo denying Plaintiffs' Motion to certify class, Without Prejudice to Renew . | |
| 10/10/1995 | Penn | 222 | Order and Memorandum denying Plaintiff motion for a temporary restraining order. Court will hear motion for a preliminary injection on 10/13/95 | |
| 10/17/1995 | Penn | 227 | Order denoting motion for preliminary injection moot and denies motion to intervene of 6 people. | |
| 4/26/1996 | Penn | 239 | MEMORANDUM by Chief Judge John G. Penn relative to Order 240. | |
| 4/26/1996 | Penn | 240 | Order denying motion for reconsideration the following: Order 227-1, denial of intervention and for a preliminary injection prohibiting termination of senior employees who are putative class members of the ADEA class. [231 1 by Plaintiffs] | |
| 5/2/96 | Penn | 241 | Denying as moot Defendant's motion for a protective order.  Sets dates for Status reports and Status Hearing. | |

| 5/15/1996 | Penn | 242 | Order Supplemental Memorandum for a group of employees due 6-28-96 Further ordered that 5-2-96 court order is Stayed until further order of the court. | |
| 2/18/1998 | Penn | 254 | There are a myriad of rulings finding various motions moot. (Rulings were based on tainted facts disclosed to be untrue 3 years later). | |
| 3/31/1999 | Penn | 256 | Denial of Plaintiff's motion for leave to expand discovery, to add interrogatories and one request for production prior to evidence hearing. Denied motion to alter or amend Class certification judgment order [202-1]. Allowed motion for Cantwell to intervene. | |
| 3/31/1999 | Penn | 257 | Scheduling Order | |
| 5/8/2000 | Penn | 271 | Order extending time for response to 3rd amended complaint and add 3 more party interveners and motion to reconsider all pending motions and motion for partial summary judgment and motion for partial summary judgment for preliminary injunction. | |
| 10/2/2000 | Penn | 288 | Order for a Status Hearing | |
| 10/5/2000 | Penn | 289 | Memorandum order stating discovery is stayed until resolution of pending motions. (Resolution never occurred) | |
| 10/27/2000 | Penn | 291 | Order holding Michael Wolf (Chairman of GAO PAB) is not a defendant | |

| 9/30/2002 | Penn | 328 | Order Denying w/o prejudice Plaintiffs amendment and update for consent motion for status call. | |
| 3/14/2005 | Penn | 330 | Court will review plaintiff's discovery request on condition that plaintiff's file a motion addressing 1) discovery sought, 2)nature of discovery 3) and answer why it is sought now and what it suggests it exists. (Consideration/review never took place)(J. Penn apparently ill) | |
| 3/30/2005 | Penn | 331 | Denying as moot Plaintiff's motion for status call. | |
| 8/13/2007 | Hogan's | | Minute Order asking for status of the cases to be sent to Chief Judge. | |
| 12/10/2007 | Sullivan | | Minute order stating Plaintiffs shall file a 4th amended complaint. Numerous motions were denied. Among these are Plaintiff's motions for Discovery, Intervention and Consolidation. | |
| 4/15/2008 | Sullivan | | Minute order to Magistrate Judge Robinson for Report and Recommendation on dispositive motions. | |
| 4/25/2008 | Robinson | | Minute order Denial of motion for a Hearing (366 filed 2-7-08) | |
| 5/20/2008 | Robinson | 378 | Order granting (376) Motion to withdraw motion for summary judgment and move to default judgment since over 90 day response date. | |

| | | | | |
|---|---|---|---|---|
| 5/20/2008 | Robinson | | Minute entry Status conference 5 20-08 in place of the vacated hearing. Counsel to file joint status report regarding conduct of discovery. | |
| 6/24/2008 | Robinson | | Minute order denying leave for discovery since Plaintiffs have failed to identify any nexus between the discovery which they seek and issues presented by the motions to intervene. | |
| 7/2/2008 | Robinson | | Minute order for defendant to respond to Appeal to Magistrate Judge Decision by July 10 2008. | |
| 7/16/2008 | Sullivan | | Minute order denying leave for discovery prior to a hearing supporting Magistrate Judge order. | |
| 7/22/2008 | Robinson | | Minute entry for proceedings held before Judge Robinson. Motion to intervene (364) denied for reasons on the record. Motion for time for defendant to answer 4th complaint granted. | |
| 12/17/2008 | Sullivan | | Minute order - supporting Judge Robinson ruling saying an appeal is not necessary and that an evidence hearing is not warranted denying both Plaintiff motions. | |
| 1/28/2009 | Sullivan | | Minute order delaying a hearing due to a criminal case. | |
| 2/4/2009 | Robinson | 412 | Order by Robinson for reasons offered by defendant to Motion for a More Definite Statement is granted. Plaintiffs are to file amended complaint. | |

| 3/2/2009 | Sullivan | | Minute order removing Judge Robinson and assigning Judge Sullivan on appeal. | |
| 12/18/2009 | Sullivan | 432 | Grants Defendant's motion for a more definite statement, denying motion for partial dismissal and denying motion for Plaintiffs to compel and Setting aside Magistrate order. | |
| 12/18/2009 | Sullivan | 433 | Memorandum Opinion to above. | |
| 1/26/2010 | Sullivan | | Minute order requiring Plaintiffs to show cause why they should be permitted to pursue class certification no later than 2-16 2010 | |
| 5/3/2010 | Sullivan | | Minute order stating Plaintiffs are to cite to the cases on appeal to the DC Circuit and to reply to the defendant's argument that the issues have no impact. Plaintiffs cannot combine any other cases. Cases have not been considered for any purpose and all have separate issues. | |
| 5/5/2010 | Sullivan | | Minute order following joint phone call. Plaintiffs wish to withdraw request to stay this case. Plaintiffs to reply to 442, 441 and 445 to show cause. 445 by June 1. Plaintiff's motion for Stay is Denied. Any future filings that combine the captions of this will be stricken from the record. Possible monetary sanctions. Refer to May 3 2010 order barring combined motions. | |

| 7/22/2010 | Sullivan | 461 | Memorandum Opinion and Order denying 441 plaintiff motion for interlocutory appeal. 455 motion for reconsideration and 460 defendant's motion for leave to file surreply. | |
|-----------|----------|-----|---|---|
| 2/17/2011 | Sullivan | | Minute order Plaintiffs are to submit 6th amended complaint specifying claims of discrimination of each plaintiff. Events and dates they occurred. | |
| 6/29/2011 | Sullivan | | Minute order denying Plaintiffs request for Stay and instructions that the 6th amended complaint be filed by 7-11-11 | |
| 3/30/2012 | Sullivan | 478 | Order granting motion to strike and denying (475) Cross motion for Reconsideration. | |
| 3/30/2012 | Sullivan | 479 | Final Judgment of case plaintiff's complaint is stricken and action dismissed. | |
| 3/30/2012 | Sullivan | 480 | Memorandum Opinion | |

**Related Cases and Prior Rulings of the Court (1079-1983 and 1991):**

From about 1979 through 1983 GAO employee civil rights litigation based upon alleged African American racial discrimination resulted in an EEOC investigation. Thereafter judicially binding edict(s) against GAO issued *Otha J. Miller, et al, Richard Nissley et al, Appellants v. Elmer B. Staats, Comptroller of the United States*, et al, No 82-1637,( Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 73-00996)(L.O.).

That litigation set the foundation for GAO policies for the 30 years. Appellants allege that the invidious pattern of age discrimination violations which followed, including the instant litigation results entirely from GAO Management's unlawful perversion of that initial decree, to its own personal benefit instead of the interests of justice as intended by the original consent decrees.

The first appeal of this case was of the improper dismissal by the District Court for the failure to exhaust administrative remedies.  The District Court ruling was based at least in part upon GAO's failure to inform the District Court of one of its regulations, which required (at GAO) no such exhaustion in Age Cases.  Dismissal was reversed by this Court (***Chennareddy I,*** *Chennareddy v. Bowsher, 935 F.2d 315,(C.A.D.C., 1991)).  **(Chennareddy II, is this case**).

Even as the prior Opinion was issued (in 1991), with an admonition[3], GAO had continued its deception by withholding and failing to supplement material evidence in ongoing discovery; non-candid responses of October 1989. (See Statement of Facts, Brief Following, ¶¶s 50-62,  and specifically GAO's failures to candidly answer initial discovery or supplement responses to Set I discovery,

_____

[3] This Court commented at page 320: "We are troubled by GAO's failure to bring 4 C.V.R. Sec. 28.5( c) to the District Court's attention" [relating to exhaustion of administrative remedies in an age case not required, the essence of the prior case].

Brief, ¶¶s 63-72, Apx.___, Vol IV-Initial responses to Set 1 discovery, ECF Doc. 424 -1, Pages 10-35).  Never corrected or supplemented[4].

In its initial responses to interrogatories and document production, and proceeding for the next 20 years, with the continued withholding of material and relevant evidence-and a pattern of misleading, the District Court proceeded. GAO/DOJ continued to falsely deny the very existence of two management control systems whereby GAO created and enforced the discriminatory actions complained of herein against age protected professional employees.

About the year 2000, no class having been certified, a group of Band II professionals led by James D. Moses, et. al. who were by definition members of the instant putative class, began to complain of the same type of age based discriminatory treatment.  In the interest of caution, and to protect their civil rights, against a waiver argument, they filed their own case as a related case and as the companion case herein, James D. Moses, et al, v. Gene Dodaro, USDC Case No.1:06-cv-01712 (EGS).  Comptroller General of the United States.  The companion case is Appeal No. 12-5199, USDC case No. 06-CV-1712 (RCL).

---

[4] Undersigned counsel has carefully considered the ramifications of implicating counsel, the United States Department of Justice (DOJ) in the deception herein.  It is an inescapable fact that DOJ must have actually known of the non-candid responses of the agency from the beginning but apparently chose not to report this fact.  A show cause order would appear to be appropriate on this subject.

# I.  STATEMENT OF THE CASE

## A.  Bona-Fides of this Complaint and Appeal:

(1) Appellants herein allege intentional withholding of material and relevant probative evidence encompassing the entire 30 years of this case. The withholding was never supplemented as required by Federal Rule of Civil procedure 26(e)(1)(A) even after objections were vociferously made and brought to the attention of both GAO/DOJ and the District Court.

(2) The Withheld Evidence Summarized:

In GAO's original response to discovery, Set 1, appellants/plaintiffs sought (in 1989) to elicit the scope and magnitude of GAO's management control over selection and promotion, alleged to disenfranchise essentially all older GAO professional in advancement and retention. For years after the sworn response of GAO to discovery (Apx.__, ECF 424-1, pages 35, 36-43, October 23,1989), GAO kept hidden and never supplemented the following material omissions to Set 1 interrogatories and production of documents numbers 11-16.

Hidden were:

(a) a defacto quota system, effectively eliminating promotion, selection and retention of older professional employees (this putative class). (ECF # 424-2, pages 111-117, 117 Lines 4-15.  Gebecki Testimony and ECF 436-1 Exhibits 2,

2A and 3).

(b) a comprehensive accurate statistical SAS data base reporting system containing hundreds of data fields for each employee never disclosed in the formalized part of discovery in this case.

The calculated number of produced and non produced data fields was generated by comparison of the existing individual employee fields available as per deposition testimony of GAO's custodian of records (William Mowbray) as compared to the fields produced by GAO in early discovery purporting to be fully responsive.

(3) These 12 Appellants and the several thousand members of the class(es) they seek to represent are the persons, who were credited with historically huge savings to the Federal Government, who additionally had the responsibility for stamping out fraud, waste and abuse as well as how much money the government had yet to spend before they overran the budget limits.  All of this was of course before they were (secretly but "in bulk") deemed "non-competitive" primarily based upon age (over 43, rising to 50 in later years).

(4)  But in reality Appellants were effectively "let go" by discriminatory quotas superseding merits standards enforced by the existing GAO management hierarchy, who are theoretically charged with the duty of uncovering fraud, waste

and abuse.

(5) Accordingly Appellants are represented, all thousands of them– in this brief, from actual experiences now appearing in the record of this case.  Notable examples, among others, are two of the 12 named plaintiffs who were personally responsible for savings in hidden budget overlaps exceeding 16 billion dollars, (repeating each year).  Nevertheless they were "let go" while others of obviously lesser accomplishments received favorable selections based primarily upon their age.

B. **Age Discrimination-History and Nature of This Putative Class Action:**

This case began about 1983 with several administrative complaints by 14 similarly situated professional level financial auditors, evaluators, investigators and specialists of United States Government Accountability Office (GAO) .  The 12 remaining Plaintiffs herein seek to represent themselves and a putative class (or classes)[5] of similarly situated professional investigators "evaluators or evaluator support persons", representing different fields of expert disciplines at

---

[5] The number of such class members is estimated (in the absence of actual furnishing of the needed data) as about 7,000 professionals, Former GS Levels 11-15, now re-labeled by GAO Management as "evaluators" Band I, II or III.  Over the 30 year period this case has been "live", at least 1500 have actually been materially discriminated against by the practices described herein (See latest complaint, the Sixth Amended Complaint Apx. Vol., ECF 468, 469, 470, plus Exhibits, Pages 28-30, Apx. Vol  I).

GAO. Many veterans and a sub-class of disabled veterans are included in the putative class.

GAO is a Legislative Branch federal agency headed by the Comptroller General of the United States (CG), an appointed office with a 15 year term. The present chief executive of GAO, Gene Dodaro (Dodaro), was for about 30 years of relevant time herein, the chief assistant to the then appointed CG. During that 30 years (1985-2015) two former CG's, Charles Bowsher, CPA and David M. Walker, CPA, set the policies of GAO which were theoretically governed by further oversight of Congress.

Plaintiffs herein allege a pervasive, continuing and invidious pattern and practice of age discrimination for the 30 years of this complaint. Plaintiffs adopted and continue to rely upon the theory of *Teamsters v. United States*, 431 U.S. 324 (1977). Under *Teamsters* and its progeny, the first order of business for the District Court is to consider and allow discovery of evidence from which the invidious pattern and practice is observed.

However, in this case the process was backwards. The District Court ordered discovery for class certification (Doc. # 51, 1991) as the first and *only* order of business contrary to the United States Supreme Court teachings in *Teamsters, supra*. On the contrary, *Teamsters*, establishes the burden shifting

-4-

principle as the first order of business. Plaintiffs must demonstrate a prima facie case showing the discriminatory pattern alleged thereby shifting the "Burden of Proceeding" to the defendant.

The next major Court decision was the Court's initial denial of class certification, without prejudice to renew (3/20/1995 Doc. 202). These two decisions by the Honorable Judge Penn were incorrect not through any fault of the District Court, but rather based upon intentional misrepresentations of evidentiary facts to the Court by DOJ/GAO.

An overriding procedural issue herein is whether the Appellants and/or the putative class have been denied their day in Court, and consequentially, due process of law by DOJ/GAO's failure to produce evidence, and when confronted to deny the existence of that material evidence. The evidence clearly impeaches Appellee/GAO's entire case as well as the integrity and honesty of these two federal agencies working in concert.

## C. Genesis of this Case, Related Employment Discrimination Cases (1979-1983) and Prior Ruling of the Court Herein (in 1991):

Between 1979 and 1983 employment discrimination litigation began at GAO with a racial discrimination (African American) administrative class action brought by the United States Equal Employment Opportunity Commission (EEOC) against GAO, naming its then Comptroller General, Elmer B. Staats, as

one of the named defendants.

The racial discrimination case was settled with an original consent decree in the District Court for the District of Columbia, United States District Court for the District of Columbia, *Otha Miller/Nissley v. Elmer B. Staats*, (USDC D.C. Civil Action No. 73-00996)(L.O.).   A class of white males and females (allegedly innocent of any discriminatory actions) was granted intervention.

Thereafter, the *Mille*r intervening class succeeded in modification of the *Miller* decrees, to protect themselves and the class they represented from the perceived adverse impact of the injunctive relief and ongoing corrective racial imbalance measures, which they viewed as onerous and which had nothing whatever to do with their own actions.  These consent decrees were, as a result of intervenors actions modified for protective measures they sought.  GAO however, refused to pay attorney's fees and costs.  An appeal to this Court affirmed the modified decrees and reversed the denial of the fees and costs, ruling that Appellants, Nissley/Smith et al had substantially prevailed (*Otha J. Miller, et al, Richard Nissley et al, Appellants v. Elmer B. Staats, Comptroller General of the United States, et al*, No 82-1637, 706 F2d 336 (1983)(Apx. ___).

The main *Miller* decrees, as thereby modified, were accordingly judicially approved and authorized, but only to the extent of the modified decrees.  That would include institution of an affirmative action plan modifying normal merit

promotion principles but again, only to the extent judicially approved, limited to African Americans. No plan which harmed older employees by transferring benefits from age protected persons to the benefit of much younger "women and minorities in general" has ever been approved by any judicial authority to the knowledge of Appellants herein.

Nevertheless, such an extrajudicial affirmative action plan benefitting much younger persons was instituted. That plan, the mechanics of which were never disclosed until 2001 (ECF 469, EX 1, Pages 111-117, 118-130)(SES Mgr. Gebicke's testimony) adopted quotas, had the reverse effect upon the much older professionals-this class of plaintiffs, for the next 30 years. Effectively all selection spots for key assignments, advancements and promotions were devoted to satisfying the quotas set.

Appellants allege that not accidentally, as a second by-product, alleged to be the discriminatory motivation, was substantially increased bonuses to SES managers by the creation of budget surpluses thereby available to pay increased bonuses to the (relatively small number of SES Staff managers, of course with emphasis upon the higher level mangers. The motivation to SES managers is obvious and substantial, bonuses levels rose to a level of about $ 700,000 annually   (Reference, ECF 468, 469, 470, Sixth Amended Complaint, pages 5, 9, 12, and 28).

-7-

The motivation to SES managers is obvious and substantial.  That is, GAO managers received, albeit indirectly, financial benefits from the discriminatory actions against age protected GAO professional employees by diverting higher paid salaries to bonuses for themselves.

Appellants allege, as the third adverse by-product,  that GAO's mission as the "watchdog agency",  was substantially degraded along with the careers of the about 3000 dedicated auditor/analysts/evaluators/sleuths who are the alleged injured class in this litigation with immeasurable impact upon GAO's mission as the watchdog agency for the federal government.

**D**. **The Quota System:**

Directives set by the Comptroller General at the beginning of each year's "expectations memo" which was converted to enforced selection quotas passed on to individual SES managers each year (Apx. __, ECF 436-1, and Gebicke, Pages 70, 94, 95, 111, 115).  All selection panels were chaired by a tightly controlled SES manager.  A department headed by Mr. Gebecki (Managing Director for the Professional Development Program) was tasked to ensure that new hires (generally younger people) were given opportunities for high visibility assignments and advancement. (ECF 436-1 Gebecki Deposition Pages 30, 31).

-8-

Given a finite number of possible promotions per year, it is obvious that the programs described above would cause a disparity on promotion practices. In fact the analysis performed by plaintiffs showed a virtual end to promotions after a cutoff age of 43 years.  This pattern appeared to be consistent for all years since 1983, with the cut-off age rising slightly to about 50 in later years.

The actual result of these misguided "affirmative" actions was to create a whole new damages class of age protected professionals, some of whom (women and African Americans) were the original victims sought to be benefitted by the Miller, affirmative action..  Those injured parties are Appellants herein (this age class and the accompanying *Moses et al class)*.

In addition, some of those adversely affected were those professionals over 40 who were also entitled by other provisions of law to a preference in hiring, selection and retention (for example veterans and handicapped or disabled individuals including disabled veterans, and ironically, the originally protected class of African Americans, for example, Moses, Davis and Gilbert, as members of the Moses sub-class of injured older men and women.

Obviously, no part of this "plan" has been, nor could have been validated as being within the framework allowed by Supreme Court Standards applicable to intentional favoritism to correct the (as here) valid historical pattern of racial

-9-

discrimination.  Lacking such corrective framework interference with the Merit

System Plan Standards normally effective in federal hiring and promotions

should be labeled for, and treated by this Court what it is, Age Discrimination,

Per Se.

## E. Details of the District Court's Decisions and GAO/DOJ's Abuse of Meaningful Discovery:

It appears GAO cooperated during discovery for the first 4 years, from

1989 to 1993.  However, in reality, as Appellant/Plaintiffs' subsequently

discovered that, starting in October , 1989 in GAO's initial discovery responses

(Set I, Apx._, ECF 424-1, pg. 10-35) withheld the existence of a powerful and

complete set of evidence contained in a personnel management information

system in addition to the existence of the previously mentioned promotion quota

system.

Undisclosed in discovery (Set 1 and thereafter) was the existence from

October 1989 onward in time, of a powerful employee personnel management

information reporting system in Statistical Analysis System (SAS) format.

Testimony and Exhibits to the two depositions of the creator and custodian

of the electronic personnel records, William R. Mowbray, extracted from

computer personnel information previously admitted to exist, 34 fields of

information.  Personnel information was 105 fields contained in the printed

reports.   (Page References are to testimony and oversize Exhibits contained in two sets of electronic personnel records.  Exhibit references are in ECF #436 pages 362-377) (424, 4/29/2009, ECF 436, Mowbray Deposition # 2, May 16, 2008; and again in the Fifth Amended Complaint Exhibits, ECF 436, 02/01/2010,filed in ECF in Bulk as -Mowbray Deposition # 2, Exhibits 1-5 and Exhibit # 8, Apx. ____).

The difference, 71 fields of key personnel information for each professional employee was withheld and denied to exist. That information is determinative of both the substantive pattern of discrimination alleged (that is whether or not the discrimination existed each year) and also the availability of Class Action treatment under Federal Rule of Civil Procedure 23.  This latter fact is because the District Court ruled Appellants failed to demonstrate  the elements of commonality and typicality as between Appellant/Class representatives and the 3000 members of the putative class, for purposes of class certification.

The withheld fields enumerated elements for each putative class member necessary to readily demonstrate the existence of information in computerized form allowing proof of commonality and typicality as between Appellants and each putative class member, all about 3000 of them, essentially at the push of a button.  Even after this impeachment evidence was discovered, GAO/DOJ continued to deny its existence and utility.

By this misconduct, in sum and substance, the entire discovery process covering the years 1989 to 1995 was rendered entirely futile even before it began. GAO had withheld the existence of this critical evidence needed to prove the substance of Appellants' case as well as commonality and typicality of Appellants as compared to the members of the putative class(es).

GAO's continued recalcitrance, even after the revelation of the withholding to their counsel is demonstrated by materials filed with the District Court in Apx. Volume IV all of which is hereby demonstrated to be false and misleading statements intended to thwart justice.

Without the hidden, corrected and materially complete evidence of personnel selection data contained in both of the withheld existing personnel systems, the following elements of Appellant's procedural burden in this pattern and practice case could not be proven and Appellants case was stymied:  (1) the centralized management control system de-facto denying promotions and retention of older persons, (2) the pattern and practice alleged to the District Court's required specificity, (3) the class certification elements of commonality and typicality were not addressed with specificity [6] and; (4) the merits of the

_____

[6] FR Civ. P. Rule 23.  The requirements are numerosity, commonality of claims, typicality of situation vis-a-vie class members, and adequacy of representation.

-12-

plaintiffs' entire discrimination case were flawed in that grouping of persons who

applied for or were eligible for promotions was not addressed in the expert's

statistics.

Again, appellants had requested identification of all such available

evidence and electronic data (ECF Document 424-1, Served upon Plaintiffs,

10/12/89, pgs. 10-35, Interrogatories 11-16 with GAO's responses).

In GAO's arguments opposing class certification (Reference- Statement of

Facts Section Brief, ¶¶s.63-72) GAO failed to disclose that all of these alleged

defects could have been readily, timely and economically cured by a routine data

processing analysis of hidden database evidence.  At that time GAO and its house

counsel, and very likely DOJ counsel well knew the withheld evidence was stored

and  readily available in the undisclosed (SAS[7]) system.[8]

---

[7]  "SAS", Statistical Analysis System is a high level programing language
and system having report generation utility for statistical analytical needs similar
to Microsoft Excel, as an example (Depo, ECF 436-2, Pages 362-377, Mowbray
Exhibits 1-9).  Important to the present context is the fact that it requires
formatted, edited information as input.  The existence of such "clean" employee
data was also withheld by GAO during discovery herein.

[8]  Much later, the impact of these abuses was compounded by DOJ/GAO's
failure to correct the  wrongdoing. which was exacerbated by the new District
Judge's (The Honorable Emmet G. Sullivan) failure to reopen discovery and/or
grant the relief being reconsidered hearing  by the incapacitated Judge Penn.

**F**. **Belated Discovery of Withholding of Discoverable Evidence:**

In December 2001[9] and later in May of 2002[10], it became apparent that two material and relevant previously undisclosed management information systems existed at the GAO since 1987. Those systems had been withheld from disclosure to plaintiffs (and filing in the District Court) when requested in 1989 (GAO Response to Set I discovery, ECF Document 424-1, pages 10-35). That withheld evidence was then, and still is today, critical to the resolution of this case. The as yet undisclosed evidence is contained in those withheld systems, as initially identified in related case depositions. That evidence was subsequently entered herein in support of renewed requests for reopening "pre-certification discovery", but entirely ignored by the newly appointed District and Magistrate Judges.

The newly discovered evidence is critical to the interests of justice in that it demonstrates the means and methodology used by GAO to implement and enforce the discriminatory process as well as to mislead the District Court and

---

[9] The deposition on December 12, 2001 of Mark Gebecki in the *Vant Leven v. David M. Walker*, 00-2686 (JGP)(MJ-DAR) case (ECF 436-1) .

[10] The deposition on June 27, 2002 of William Robert Mowbray, (the GAO expert employee who built and maintained the files of data evidence which Appellee's failed to identify when requested), in the *Vant Leven v. David M. Walker*, 00-2686 (JGP)(MJ-DAR) case. (ECF 424-1, pgs. 10-35. GAO's Responses to Interrogatory Set I, October, 1989).

Appellant/Plaintiffs.  Apx Vol. IV contains the factitious argument used by DOJ/GAO to mislead the District and Magistrate Judges, who apparently were entirely taken in by the deception, despite vociferous and repeated objections by Appellants.  Those objections were wrongfully taken by the District Court as "defiance" in ultimately dismissing the case for failure to state a claim, in reality yet another abuse of discretion by the District Court.

**G. The Revelations:**

On December 12, 2001, during a deposition in the *Janet Vant Leven v. David M. Walker*, 00-2686 (JGP)(MJ-DAR) case with Mark Gebecki (Gebecki), a Senior Executive Service (SES) Manager, the deponent revealed that a management information system existed[11] whereby at the beginning of each fiscal year for employee selection and promotion goals and timetables were set in a formalized memorandum.  That memorandum was identified as " Comptroller General's Expectations" (ECF 436-1, pages  68, 94, 95, 102-105, 117, 122-124, 153, 158 -160).

That system had been withheld from disclosure in GAO discovery responses although identification of all such personnel promotion managerial systems and evidence contained therein was requested in Appellants first set of

---

[11] Mr. Gebecki testified the system had existed at least since he was promoted in 1987 to SES (ECF 436-2. Pg. 40. Lines 11-16).

Discovery, (ECF 424-1, Pages 10-12). Gebicke's Deposition, (ECF 436-1, Pg. 158-160) also described the use of a system containing performance ratings of SES managers to insure adherence to quotas as set, as well as enforcement of quotas in non-SES selections for promotions by SES managers (ECF 436-1, Pages 33, 34-Line 1-2, 38-41 L-16); Administrative Record, Arnold Jones Deposition, Deposition, Pages. 174, 193, Apx.___,). Thereby the mechanism and the compulsory nature of the "goals" for promotion and selection were disclosed (Gebicke Deposition, ECF 436-1, pages 87-90, 103-105, 111, 115, 124-126).

Yet even after disclosure of the failure to produce evidence impeached GAO's ongoing discovery responses became apparent, GAO continued to dissemble and mislead the Court (Apx. Vol. III). DOJ/GAO counsel attended all such "impeachment" depositions.

GAO has also steadfastly refused to produce the newly discovered to exist evidence or to supplement in good faith discovery s required by F.R. Civ.P Rule 26(e)(1)(A). This posture continued even after undersigned counsel requested specific documents previously requested in Set I discovery. For example, Gebecki said he could get all such written expectations reports from his desk drawer (ECF 436-1, page 193). Counsel refused. Although requested, the Court was unavailable at the time to resolve the issue.

On June 27, 2002, continuing in the related case of Vant Leven in the discovery process, during the testimony of mathematician William R. Mowbray, totally unexpected testimony revealed the existence of an entire, previously undisclosed, Personnel Database Management Information Reporting System that had been operational since October, 1989.

Appellant/Plaintiffs continued to request access to the withheld evidence via motions to reopen discovery, compel discovery and hearings of the disputed facts. However the Court continued to deny such hearings (Brief Table of Rulings) GAO continued to mislead the Court, dissembling as herein documented by continued stonewalling the now clearly and apparent facts by GAO/DOJ.

Appellants submit the failure of the District Court to recognize the blatant misconduct of both DOJ/GAO was an abuse of discretion and error of application of standards contained in the Federal Rules of Civil Procedure by the District Court. It was also the second time GAO in this case has violated its duty, the duty of every federal agency to be candid with the Court in this case on all material matters of fact or law. It was also prejudicial error for the District Court to fail to hold any adversarial hearings in response to the newly discovered material and relevant impeachment evidence.

## H. Prior Litigation in this Court:

-17-

Nor is this the first instance of GAO misleading the Court in this case. In 1991, while this discovery was on hold, this Court issued its ruling and mandate reversing GAO's dismissal of plaintiff's claims on inapplicable grounds of failure to exhaust administrative remedies, commenting at the same time upon the affirmative duty of the federal agency to candidly inform the Court of material facts including its own regulations[12]. GAO ignored that admonition, and continued the deception.

**I. Procedural Errors of the Court-Later Years**:

After Judge Penn's death the newly assigned Judge, Emmet G. Sullivan, refused to re-consider, failed to correct and failed to hold any evidentiary hearing regarding the withholding of electronic evidence, thereby contravening Judge Penn's final oral ruling. Judge Penn stated he would reconsider the denials, including reopening discovery upon the compliance with specific conditions, which Appellants' dutifully followed, but too late, Judge Penn died, apparently having never signed the Order for the resumption of discovery, or granting of a

---

[12] *Chennareddy v. Bowsher*, 935 F.2d 315, 320 (C.A.D.C., 1991). We are troubled by GAO's failure to bring 4 C.F.R. Sec. 28.51© to the District Court's attention. An agency of the United States, like an attorney practicing before the court, has an affirmative duty to inform the court of controlling precedents, including the agency's own rules and regulations.

hearing on the merits of the deceptions by DOI/GAO.

After the Honorable J. Penn's death, Appellants realized that the entire judicial process in the District Court was incomplete and tainted by omission of material evidence (as mentioned above). The only practical remedy was to request a hearing on disputed facts, presumably followed by corrective action by the District Court. A status hearing to resolve matters pending before the assigned Magistrate Judge, the Honorable Deborah Robinson was convened. The parties appeared. However, the Magistrate Judge abruptly cancelled the hearing and never reconvened, incredibly ruling that there was no "nexus" between the discovery requested and pending matters before the Court (ref. Minute Order 06/24/2008).

That Order was not merely an abuse of discretion, Appellants submit that the Magistrate's denial, thereafter de-facto affirmed by the District Court, rose to the level of denial of basic due process of law. Those Orders accepted as an accomplished fact the fraud upon the Court in favor of GAO's earlier manifest factual misrepresentations to Judge Penn that:

AUSA Mrs. Marina Braswell:
"And my recollection is that there was a specific request for that database and that we said there is no such thing as a Bob Mowbray database."
 (Reference-March 10, 2005 Transcript (ECF Document 430-2. Page 22 lines 14-16).
The later Magistrates's ruling, followed by the District Judge's

-19-

affirmation without any hearing on the clear misconduct of DOJ/GAO amounted to a complete denial of Appellants' day in Court and was essentially a bad-faith evasion of application of the most basic standards of honesty in the conduct of discovery by GAO and its counsel. Appellant/Plaintiffs appealed to District Judge Sullivan.

Although the Honorable District Judge struck all of the Magistrate's rulings, he nevertheless reaffirmed all dishonest acts, adopted the Magistrate's results and thereby continued the denial of access to the Courts, and inexplicable acceptance of the now apparent fraud upon the District Court and these Appellants (See transcript of Hearing 3-14-05, before Judge Penn. (ECF # 330, pages 1-30).

## J. The District Court Erred in Application of Discovery Standards:

Notably, no evidentiary hearing ever occurred in this case. The above denial of plaintiffs' right to present evidence to the District Court violated the applicable burden of proof and standards for proceeding where facts are in dispute, particularly in federal employment discrimination cases which recognize the relaxed standards for the burden of proceeding wherein the employer normally, as here, holds all of the evidence. Regardless of which standard was

-20-

applied, either the (1) new Twombly/Iqbal (2007)[13] reasonableness standard, or

(2) the earlier *Connolly vs. Gibson* standard (1957)[14] which takes all of a

plaintiffs' allegations as true before meaningful discovery takes place the

applicable standard was violated.  Here, no meaningful discovery at all ever

occurred, regardless of standard used for the determination.

**K. Judge Penn's Final Ruling, Granting Belated Discovery On the Frauds Was Swept Under the Judicial Rug:**

After approximately 20 years of GAO/DOJ's afore-described dissembling

and furnishing of false answers in discovery and misinforming the District Court

as to basic facts relevant to the issues of this case, the Honorable John Garret

Penn, after being confronted with the deception, agreed to reconsider additional

discovery.  This decision was after a status hearing where the existence of

withheld evidence was disclosed.   Appellants' submit that The Honorable Judge

correctly ruled as follows; but unfortunately no follow-on judge heeded the

apparent intent of Judge Penn's ruling.

---

[13]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 Led. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

[14] *Connolly v Gibson*, 355 U.S. 41 (1957).

**Docket Entry 330, 03/14/2005** (Apx,__):

The Court will review plaintiffs request [to reopen discovery on the withheld evidence] on condition that plaintiffs file a written motion in which the plaintiffs address the following requirements:

1.  describe the particular entity from whom discovery is sought.

2.  describe the particular nature of the discovery sought, for example, whether the discovery sought is believed to support the pending motion for class certification or for the purpose of filing an amended complaint.

3.  describe the particular reasons why discovery is sought now and what suggests to plaintiffs that it exists.

Appellant complied with the filing requirements contained in the Order, without ever an objection from GAO/DOJ.

**L. Overall Appealable Result**:

If GAO had candidly produced the withheld employee transactional evidence stored in the withheld computerized evidence, in the form utilized by GAO (readily available and machine manipulable SAS data files) Appellants could easily have met all of the evidentiary requirements for proof of both the invidious pattern and practices alleged, and the prerequisites of commonality and typicality for class certification.

That proof would have been a simple, even *trivial exercise in data*

-22-

*processing and statistical analysis,* according to Appellants experts. No part of that production would have been burdensome in the slightest.

Because this data remains intact (or should be, as "live evidence" relevant to this appeal) this key fact is even today, easily ascertainable as to the truth or correctness of the respective parties credibility and factual representations for the entire history of this case.

## II.  STATEMENT OF FACTS

1. All of the preceding facts are incorporated by this reference.

2.  Appellants reaffirm for clarity, that in none of these related cases, and in hundreds of interviews with GAO personnel in conjunction with class or collective claims, before the Agency or its oversight arm, in no pleading or filing, (a) was the electronic data evidence contained in the "Bob Mowbray's (i.e. secret) personnel database" system revealed or disclosed.  Further;

(b) similarly, no discovery disclosure nor supplement to discovery as required by F.R.Civ.P. 26(e)(1)(A) was ever made, of the CG's selection system's existence utilizing alleged "quotas" contained in each year's  "Annual Expectations Memorandum" system to SES managers.

3.  On the contrary, in violation of a federal agency's duty for fair and candid disclosure, GAO, even after exposed as misinforming the District Court,

continued to dissemble and mislead and dupe the District Court judge as to the basic nature of this case; a pattern and practice policy of age discrimination benefitting Senior Management.

4. As a consequence of the omission of the existence of these systems no complete responsive discovery (both paper and electronic) was ever produced by GAO.

5. Finally, the presiding District Judge Ordered the 12 remaining plaintiffs to remove pattern and practice claims from the case and specify in further detail the individual claims of each individual Appellant as a prelude to any further processing of this case.  After first carefully considering all available facts then held by both counsel and the plaintiffs, and thereafter referring the Court to the 188 pages individual interrogatory responses of each of the plaintiffs in 1989, plaintiffs determined that all information with respect to these named plaintiffs had already been furnished to both the Court and to Appellee.

6. Appellant/plaintiffs declined to perform the useless act Ordered by the new District Judge and filed their revised and updated 6th Amended Complaint (ECF 468-470, 34 pages, with Bulky Exhibits).  The District Judge then dismissed the entire case for failure to state a claim (ECF 480, Pages 1-23).

7. By this action, in an abuse of discretion not based upon accurate or

complete facts, the District Judge accepted the fraud upon the Court and the Appellant's herein as an accomplished fact.  This decision effectively decided that the GAO was above the law and that standards normally applicable to a federal agency are inapplicable to the instant situation for some never articulated and therefore unknown reason.

### Non-Responsive Discovery by GAO:

8.  October 23, 1989 - GAO's sworn response to Plaintiffs' first set of interrogatories was served on undersigned counsel by mail (424-1 page 43) and filed with the District Court (Apx. Vol. IV, ECF#424-1page 1-43).  Material omissions were made from this document.   The most notable omission was, with regard to Interrogatory and production request # 11-- identification and descriptions of all personnel systems-- those handling professional employee data and selections for promotion and assignments.

9.  GAO Discovery Responses 11-14 (ECF 424, Exhibit 1, pages 10-35) have intentionally omitted material and relevant evidence relating to two major management systems, the descriptions of those systems, the components of those systems, and the evidentiary data stored in those systems.   The responses omitted existing  discoverable evidentiary materials.

10. The credibility implications upon the facts of this case, under standards

-25-

applicable to federal agencies by this Court, are relevant and material to all issues herein.  This fact, which never has been before a Court for a factual hearing should strongly influence if not govern all events and representations of fact below.

### Practicalities of Early Data Production (pre-1989):

11. At the beginning (1983-87), when a personnel transaction occurred, data reports and statistics were stored in electronic disk and tape form.  That data was largely stored in unedited and unverified electronic format, the form produced to Appellants at all times thereafter.

12. This material fact however, changed without notice to Appellants, even in the initial responses (ECF 424-1 Exhibit 1) which occurred in October 1989.

13.  The data produced to Appellants (1983-1995) was furnished to Appellants and their experts in that same archaic, unedited format.  As a result it was unnecessarily laden with errors requiring a great deal of manual correction and manipulation to make it usable even as late as January 13, 1993. (ECF 143, pages 1-9-Appellees' Supplement to Data Production-Interrogatory set 6).

Data production by GAO was provided in both hard copy and on (3) 3.5" floppy disks.

### Analysis Performed on Raw Unedited Data Produced:

14. Data analysis by Appellants and their experts was limited to comparisons of promotion rates as a function of age due largely to the incompleteness and awkward form of the data produced.

15. Eligibility for promotions (as that term was used by GAO at that time) was established by the tenure of an employee in a position although as is now known, much undisclosed data was available in the withheld SAS personnel system.

16. The nature of Appellants' analysis of pattern and practice information was limited by practicality to a few key fields centered on promotions. Also, no other data fields were produced by GAO in its initial production.

17. Without the benefit of the SAS evidence available after October, 1989 (Apx. __ECF 436, Exhibits 2 and 3-Mowbray Depositions and Exhibits) the Following Report was rendered, on April 3, 1995 - by Plaintiff's statistical expert, Dr. Richard J. Lurito (Lurito):

18. Dr. Lurito calculated from the data furnished that the promotion rates for much young employees was about 3.5 times higher than promotion rates for older protected employees (Opinion, ECF 436, pages 440-443). As explained above, Lurito's opinion was based on the raw data furnished by GAO for the period of 1984 - 1992 (9 years) as hand-corrected by Plaintiffs over many

months.  The corrected data was never challenged by GAO and is therefore has

been conceded as accurate and essentially substantively correct statistical

information, as to the overall results reported.

19. The Lurito opinion as to the meaning of that data derived from the

corrected and conceded data was however vigorously disputed by GAO without

explanation.  No evidentiary hearing to determine resolution regarding data

interpretation or correctness was ever held.

20. Dr. Lurito's opinion states, in the final paragraph on page 4:

> It must also be emphasized that the comparisons that have been made
> in this affidavit, relate to a person of very homogeneous education and
> training who have attained a grade 12 or higher at the GAO.  The one
> constant determinative factor that seems to explain their likelihood of
> promotion is their age.  Employees under 40 years old consistently and
> persistently have a far greater likelihood of promotion to a position of
> higher grade then their counterparts over age 40 who are competing for
> the same position and grade regardless of GS grade or year.  This
> pattern is similar for the eleven (11) prospective class representatives,
> the 180 sample and the 100% sample for the GAO as a whole.

[Richard J. Lurito, PhD, April 3, 1995]

21. Since GAO withheld, never identified, and never argued the now

known to exist additional relevant and material data (for example the

commonality of claims or the typicality of situation as between the 12 Appellants

and members of the putative class), a later or more extensive analysis of the

employee records was not possible or practical at any time thereafter.

-28-

22.  Nevertheless it is now known that if any such analysis were performed now from existing data, that withheld evidence is expected to verify entirely Appellant's expert's results simply because there are no known errors in the hand compilations used by Dr. Lurito at this time.

23. Moreover, the Lurito data is a part of the same evidence that is now stored in the Statistical Analysis System (SAS)[15] format, making it is easily utilized by more advanced methodologies recently developed in the event this Court determines that some remedial action is appropriate and warranted in regard to this brief or reply.

24.  Obviously, the 71 data fields withheld, including those necessary to compute commonality and typicality of each Appellant vis a vie the likely hundreds of similarly situated class members could not have been considered by Dr. Lurito, for that evidence was not disclosed.  But now that the correct data is known to exist, it would appear available for use by the parties as rebuttal evidence should the Court deem that process helpful at this time.  Again, according to Appellants' experts, the effort to do so, to whatever extent deemed appropriate would be essentially "trivial".

25.  In light of the failure of GAO to respond in good faith, and the

---

[15]    The Mowbray tape files are stored in "SAS system format".  SAS is a major statistical system language in general usage since about 1985.

-29-

testimony of the creator of the system, Mowbray, to the effect that any such analysis was routine, demonstrating a lack of burdensomeness, there should be a strong inference drawn by the Court that even without such routine analysis, the fact of liability for the pattern and practices alleged exists, and class certification commonality and typicality appear to be a virtual certainty.

26. Figure I is a compilation of data developed in pre-certification discovery for the years 1984 to 1992 (Apx.___ ECF 304 and 306).  The 2004 promotion rate data shown was obtained from a PAB report issued in 2005 (Apx.___PAB Report 2005, pg 18-21) appended to the original discovery data. The resulting report data shows for the entire term depicted there is a similar disparity in promotion rates for all relevant employees consistent for all years.

### FIGURE 1-PROMOTION RATES by AGE



27. The above promotion rates by age do not consider the various levels of expertise at which each age group is being measured.  Nor did it reflect review assessments among other factors.  But such analysis is a routine trivial task given access to the withheld data and current state of the art in such systems.

28. On average the probability of promotion for younger persons is about 3.5 times greater than age protected persons.  That same pattern appears to have continued essentially unchanged for another 16 years.

29. Additionally, and perhaps more importantly, Plaintiffs measurements show a virtual zero promotion rate at age 43 at the beginning of this case 1987-1992.  After 1992 and Lurito's opinion and sometime thereafter, this "cut - age"

increased to about age 50.

30. Plaintiffs "snapshots" did take into account the fact that "Band II[16]" professionals are all competing for the next level from an existing equal platform rendering the chart depiction accurate.

**Existing Anecdotal Evidence Mirrors
the Incomplete Statistical Data Produced:**

31. Additional supporting evidence of record is the experiences and observations of the 12 plaintiffs. All of the plaintiffs' experiences mirror the pattern alleged. Their sworn affidavits can be found in the Plaintiff's 188 page responses to the Defendant's first set of interrogatories (Apx. __ECF Document 468-6, Pages 1-188).

32. As noted above, and in the supplemental evidence contained in Apx. Vol. III, although readily available in machine manipulable form (SAS files) and repeatedly requested since its discovery, GAO has never produced the relevant and material employee data contained in the 71 withheld employee information fields.

33. GAO has not provided any analysis to explain the promotion rate disparities thereby tacitly admitting that it has no evidence refuting these data nor

---

[16] During the 30 year history of this litigation GAO dispensed with the GS grade system and replaced with the Band Systems includes: I, II, III followed by SES.

the conclusions of an overall pattern and practice, as drawn in Dr. Lurito's

opinion and thereby meeting the requirements for initial determination as per

*United States v. Teamsters*, supra.  Thus, the age bias cited is, by a preponderance

of the record evidence, a correct assessment of the practices alleged for that

relevant period of time, 1983 to 1992.

   34.  This leaves the only gap in Appellants' proof necessary for class

certification, the lack of data supporting the "commonality" and "typicality"

requirements of F. R. Civ.P. Rule 23.  However, the shear number of employees

in the class (over 3,000 potential members) supports the strong likelihood that

each Appellant would have at least several hundred similarly situated employees,

with commonality and typicality relationships with him/her.

   35.  In addition to the inference of a strong bias, measured by Dr. Lurioto,

there is separately demonstrated as listed in the raw individual data a near

universal "cut age", beginning at about 43, and rising to about 50 in later years.

   36. Once the "cut age" was reached the more senior investigators,

regardless of accomplishments[17] were de-facto unwelcome by their SES superiors

---

   [17]  As an example, two of the twelve Plaintiffs actually saved the
government a total in excess of $16 Billion in a single year, repeating in
subsequent years.  $8 Billion each in budget duplications, in two separate matters
were uncovered.  Ironically, their ratings dropped in succeeding years and neither
received recognition or awards or bonuses for these accomplishments, a truly
perverse result.

at the work place and were effectively coerced to retire or to leave the
organization.

37.  Accordingly constructive discharges are also claimed by each plaintiff
and class member, to whom applicable.

38.  Never, in GAO's responses, nor in initial responses, nor in
supplements nor even after discovered in a related case as omitted, did GAO ever
mention the withheld evidence.  In other words, the Appellee kept this relevant
and material evidence secret, and repeatedly denied it existed, and took unfair
advantage of that fact in urging the District Court to deny Class Certification on
grounds of insufficient evidence of Commonality and Typicality, all totally
contrary to a Federal Agencies' duty to disclose relevant facts to the Appellants
and the District Court (Apx. Vol. IV).

**Appellant/Plaintiffs' Initial set of Interrogatories -Excerpts
October 1989, Set I, Interrogatories 1-16; Production of Data:**

Full text of Set One Discovery (Apx. Vol IV, Doc 424-1, Pgs 1-43)

**Interrogatory Number 11** [from Plaintiffs Set I Discovery,
Oct 1989]:

Please describe and identify in summary fashion (one page or less),
each and every system utilized by the GAO for grades GS 11
through 15 in the evaluation of personnel with particular emphasis
on methodology utilized in promotions (ECF Document 424-1 page
10-12).

-34-

**Interrogatory Number 12.**

For any such system identified in the preceding interrogatory please give a detailed explanation of how the system works. If a manual has been prepared describing the system, furnish a copy of each such manual.

**Interrogatory Number 13.**

Please identify each specific item of employment information which is maintained for employees corresponding to or showing specialties, accomplishments, or behavioral traits of GAO employees which are maintained on computer files.

**Interrogatory Number 14.**

Please identify all factors used in granting promotions. Of the foregoing identify those that are maintained on computer files and identify those that are not maintained on computer files including identifying where that data is stored.

**Interrogatory Number 15.** (Apx_ECF# 424-1, 4/29/09, pg 32 of 43)

Please identify all sources of information relating to GAO employees from which the following information may be obtained:

    (1) Educational level;

    (2) Classification of speciality groups of a articular employee, i.e. , attorney, accountant, computer specialties, etc;

    (3) First date employed in any relevant series is defined as any evaluator or evaluator related position as defined in GAO's answer to Interrogatory No. 10 (a) and (b);

    (4) The educational field of highest degree attained by the employee;

-35-

(5) The date that degree was obtained.

**Interrogatory Number 16.**

....This Interrogatory requests identification as further described in definitions applicable to the particular Interrogatory for all data records that have been previously furnished in disk format and in addition, for additional data which is furnished by GAO in Response to this Set of Interrogatories. (Emphasis Added). (Reference-ECF 424-1, pages 34, 35.

39. Stricken. Number Reserved-to preserve sequence.

40. Stricken.  Number Reserved- to preserve sequence.

**Withheld System I**
**Promotion Control with Enforced Quotas:**

41. SES Manager Mark Gebicke ("Managing Director for the Professional Development Program"-now retired)[18] in a December 2001 deposition described the documents and procedures used to create the a mechanism whereby GAO's management (the executive committee) conveyed and enforced its decisions as to the "shaping" of the personnel attributes (i.e age, race, gender, condition of disability, etc.) applicable to the entire GAO staff (ECF Document 436-1, 12/12/2001, Pages 68, 94,113-117).

42.  This management system had been in effect when Gebicke was

_____

[18]  Gebicke testified on the subject of GAO top management's centralized control over the personnel ratings and promotion process.

elevated to SES rank on or about 1986 (ECF Document 436-1, Pages 102-108). The system began with a "Comptroller General's Expectations Memorandum" delivered to all SES managers at the start of each fiscal year (ECF 436-1, Pages 42, 68, 94, Exhibits 2, 2A, and 3, Transcript pages 113-117).

43. Through centrally controlled, strictly enforced procedures (Apx. Vol. III, year end reports, Gebicke Exhibits 2, 2A and 3, performance expectations reports), each SES  manager was subject to enforcement actions governing quotas in ratings and selections.   The result was adherence by each SES manager to the quotas set by top management (See testimony, Arnold Jones, Manager, Affirmative Action Department, ECF Document 306, Sec 23,Filing 11/10/2000; SES Contract Assessments and Goals, pages 8-16).

44.  Although largely manual and highly subjective, the promotions selection and management system was in effect for all relevant years of this complaint.  The enforced selection system functioned as follows:

Chart I Promotion Control System



45. Mr. Gebicke, was questioned as to where the yearly "Expectations Memoranda" (Step 1 of the control system) were stored. He testified that he kept all of his SES contracts and Reports in his desk drawer, several floors below. Demand was made at that time for all of those reports and memoranda (all being relevant to the term of the alleged violations) however GAO refused. All attempts to obtain all such memoranda were rebuffed by GAO and never required by the District Court[19].

46. Thereby, the enforced *quotas* (though always labeled and spoken of at GAO as "goals and timetables") for recruitment and promotion of minorities, women or other personnel with differing characteristics for a particular year, were set for each SES person.

47. Mr. Arnold P. Jones (Jones), Director of the Office of Affirmative Action Plans of the Equal Promotion Review Program, testified as to how the promotion and selection practices were instituted (Apx. Volume IVA, Tab 23, page 16 of Administrative Record, entered into the ECF Record on November 10, 2000, ECF 306, as supplemental material, without objection). Jones would receive the yearly "Expectations" memorandum. Jones would thereafter instruct each SES member to establish his/her individual "goals" in conformity with the directive for each SES's promotion and selection action within his/her purview.

---

[19] The District Judge, it is now known, was suffering from an ultimately terminal illness.

-39-

Jones testimony was:

> I will say, it is time for you to determine your goals, or that it is time to
> determine availability. Those are mandatory reporting requirements
> imposed on units by me as a consequence of the [GAO's] affirmative
> action plan (Arnold Jones Deposition, Administrative Record, Section 23,
> Apx. _Vol IV_ Pg. 16, line 6-11, ECF Document 306).

48. An important aspect of the quotas is enforcement. Each year, every
SES person is required to reapply for renewal of his/her SES contract. At the
end of each year, each SES person was required to report how he/she
implemented the Comptroller General's beginning of the year "expectations".
Strict adherence was required, or the violator's SES contract was not renewed.
(Reference to pages of Record-Gebicke Exhibits 2A-Transcript page 91, and 3,
SES Performance Contract/Assessment, (ECF 436-1, Page 4 pf 195, Exhibit #s 1-
3). See CONTENTS, of Examination of Mark Gebicke, SES Manager, "Gebicke
Deposition Exhibits", Page 4 of 195 for Cross-Reference to the pages of
Gebicke's deposition where the meaning of each one of these enforcement reports
are listed).

49. SES contracts contain a sample of end of year enforcement reports
demonstrating that an objective was met by a SES manager. The quota was met

by meeting the beginning of year quota to select a specific number of racially and gender specific employees.

### System II-William R. Mowbray's GAO
### SAS Electronic Database Reporting System

50. The *second* withheld system is an electronic personnel data base reporting system in "Statistical Analysis System" (SAS) format containing all relevant information required to measure performance and skills of GAO's professional staff. This system was in full operation (i.e. "went live") in October 1989 including employee data from 1986 forward  (Testimony Mowbray (ECF 436-2, Pages 13-15).  The Court should note that the date this comprehensive database system became operative the very same Month and year, (October 1989), that GAO/DOJ responded to Plaintiff's 1st set of interrogatories.

51.  Mowbray System contains personnel data for all the required and requested  information relative to promotions at GAO.  It also contains all of the information for a class certification decision.

52.  Part of the information in the Mowbray System in the form of personnel data was finished and part was not furnished (For References to the Record See Below[20].

_____

[20] ( -See ECF Documents 436-2, Mowbray Deposition # 1, and Mowbray Deposition # 2, ECF 436-7 , with Exhibits furnished in both depositions.  Then Compare that Information with the several fields of information provided by GAO

53.  Because the data was maintained in a standard language, SAS, if furnished in the form maintained (as per F.R.Civ.P 34), the detailed information contained was and is readily machine manipulable.  All that was necessary was the disclosure of the data, and descriptions of the contents of all data fields.

54. As summarized in Mr. Mowbray's system of reports, the withheld employee database evidence contained essentially all of the specific personnel information deemed relevant by GAO top management to measure and compare groups of employees.

55. That data base also contains 105 fields containing employee attributes. (Apx___ Vol. III, Sixth Amended Complaint, ECF 468-470, pg.11).

56. That evidence is the same evidence not disclosed or admitted to exist from which Appellants allegations shall be conclusively proven.

57.  The data is maintained in the form of four magnetic tape files for each year.

58.  The data has been maintained beginning in 1986 (ECF# 424 Exhibit 3, pg 29 line 24, Mowbray Deposition # 1, ECF 436-2, pg. 22-28) and continues to date - of deposition # 2 (Apx.__ Vol IV, ECF 436-3. pg 4,5).  The data, and analysis utilized by top management is maintained on a main frame computer in

in its data production in this case).

-42-

Austin, Texas (Apx __ ECF# 424, Exhibit 3  Mowbray, Deposition # 1, Vol IV,
ECF 436-2 pg. 29 Line 24).

   59. In a second Deposition of Mr. William R. Mowbray on May 16th 2008
specific questions were directed at the data fields that the dynamic database
system contained beginning with the year 1987.  Mr. Mowbray described in detail
the list of employee data fields available in the employee database system (ECF
Bulk Filing for the Fifth Amended Complaint, Docket # 436, wherein 9 Exhibits
have been Attached to the Fifth Amended Complaint. Mowbray's Depositions are
Exhibits 2 and 3 thereto. ECF Doc. #436 Pg 362-377).  He  described in detail the
data content and meaning of each field. The Exhibit list Mowbray referred to
during the deposition is located in (Apx. ___)[21].

   60.  Comparing Mowbray's list of available data fields to the data
produced by GAO, it is apparent that GAO was not candid in its responses to the
first discovery set 13 years earlier which was never corrected.

   61. Mowbray, in his daily work routine, provided numerous reports to a
variety of departments.  Some reports were complex. Others were as simple as

_____

   [21]  The Mowbray Deposition Exhibits are contained in  two lists. 21 Exhibits
for the 2002 deposition, and 8 for the 2008 deposition.  The 2008 Exhibits are
contained in a "large brown envelope" appearing in the bulky documents room of
the District Court.  Other references to Exhibit materials are:  Exhibits 1-9, pgs 1-
36, 4A(2)-5, pages 1-37 and Exhibits 10-21, pages 1-34) Apx. Vol. IV Pgs. ___.

listing all the ratings for people that were in the same pay plan, band and unit (ECF 436-7 (Mowbray "Reports", Page 25-28, 92, L 1 ).

  62. Accordingly GAO management well knew that discovery herein was intentionally defective and thereby the court was misinformed to the point of deception.

**The Bob Mowbray GAO**
**SAS-Personnel Database Analysis and Reporting System**



(Data Herein Contains Essentially All Relevant and Material Evidence In SAS Edited Electronic Form On Promotions and Selections for the Relevant Litigation Period of Time):

**REPORTS IN ANY REQUIRED FORMAT OR CONTENT**

### DOJ/ GAO Dissembling Regarding Withheld Evidence

63.  The following examples demonstrate how, over the years GAO misled the district court with regards to the incorrect conclusion that GAO had been fully responsive to discovery.

64. GAO's initial response to Plaintiffs Fifth Set of Interrogatories (response to plaintiffs interrogatory #45) denied the existence of "centralized automated records listing non-selectees for promotion"(ECF Doc 120, pg 10 of 35 (11/13/92).  This statement is in direct contradiction to the evidence of the existence of this data. (Custodian of the Records testimony, ECF 436-2 and 436-7-2008, Depositions and Exhibits).

65.  Notable is the failure of any sworn verification of the false response to interrogatory # 45.  The signatories to this documents appear to have carefully excluded verifying this particular interrogatory. Mr. Mowbray with first hand knowledge did not verify interrogatory #45 but instead verified another response in the same set.

66. When, 13 years later, the undisclosed i.e. the hither to "secret" Data base system was brought to the attention of the District Court Judge (Judge Penn-Deceased) by undersigned Counsel in a status hearing held in March 2005,

Counsel for GAO, continuing the charade, stated incorrectly "... there is no such thing as a Bob Mowbray database."[22]

67. Still later, when confronted with the unreported existence of both the SES and SAS systems in Plaintiff's "Motion for Additional Discovery for Purposes of Class Certification and Amendment of the Existing Complaint; Necessitated by Previous Bad Faith Discovery and Misleading of the Court by the GAO") (Docket 332), GAO Counsel DOJ responded on 6-10-05 stating:

> "During ensuing discovery in this case, plaintiffs received computerized data on numerous other occasions."  "Plaintiffs' accusation that GAO has somehow covered up the existence of computerized employee data is patently false."  (See Apx.__ Vol. 2, Docket 335, page 6,7, 06/10/ 2005-continuing to repeat the same falsehood)

68. Again in the Defendant's "Opposition to the Motion for Leave to File a Fourth Amended Complaint , to Add a Party Defendant, for Reconsideration of Plaintiffs' Motion to Add Three Intervenors and Other Requested Relief" GAO counsel stated (on 11-1-06) that it has provided voluminous electronic data on numerous occasions and again concludes "plaintiffs' accusation that GAO has somehow covered up the existence of computerized employee data is thus patently false", thereby continuing the charade (Docket # 346 pages 38-40

---

[22]  Excerpt from Transcript 3-10-05 Chennareddy Status call ECF Docket 337-2.

69. In Defendant's Opposition to Plaintiffs' Filing of February 5, 2009, GAO's then *DOJ counsel* uses a new tactic. Counsel states:

"Mr. Mowbray's testimony merely reveals the extent of the electronic personnel data that is available to Defendant. It does not provide evidence of any improper withholding of such data." (See Apx Vol. 2, Docket 414, page 11).

70. This statement is refuted by the GAO's own documents and testimony herein. Of course Mowbray's testimony does not demonstrate a falsehood by Mowbray. Mowbray's statements are true. It is the previous denials for 20 years of its existence, the evidentiary data contained therein, failure to produce it, and the failures to supplement known false answers.

71. This demonstration of falsity is particularly undeniable since Mr. Mowbray's oral testimony is supported by documents created from the existing system with supporting details provided by Mowbray's testimony as the custodian of the evidentiary data and creator of the systems (in 1989).

72. This evidence of raw unadulterated falsehood demonstrates the cavalier attitude that this agency and their counsel bring before this Court and demonstrates a total contempt for the rule of law, much less constitutional and ethical restraints expected of two agencies of the United States of America.

**The Utility of the Evidence Contained in the Mowbray Dynamic Data Processing System and Its Relevance to Plaintiff's Case**:

-48-

73. The withholding of the Mowbray system and it's data had multiple debilitating effects on appellant/plaintiffs' discovery. That withholding amounts in sum to complete bad-faith blocking of the entire discovery effort. These affects as particularized are:

A. The data actually produced to Appellants/plaintiffs was both incomplete (i.e., fields were missing) and unedited (i.e., not machine manipulable). On the other hand the data used by the Mowbray system was complete and edited, machine manipulable.

B. The unavailability of data fields contained in the Mowbray System which were vital to determination of commonality of claims and typicality of situation. The lack of that data was precisely the missing element that the 1995 and subsequent decisions of the Honorable Judge Penn were predicated upon. And all of this time the very evidence needed existed but was intentionally withheld by GAO. For Example: Mr. Mowbray testified that it was very simple to generate any requested report and that any of the available fields (including the material class-certification data) could be used to generate any required report (Mowbray Testimony, ECF 436-7, page 25 of 99, Lines 2, 7-9).

C. And most importantly, the data manipulation capability inherent in the existence of the comprehensive data bias in readily machine manipulate able format, stored as SAS (statistical analysis system) files makes any analysis of

-49-

patterns and practices imbedded in the data, obtainable with what one of plaintiff's experts has described as "trivial effort".

## GAO's Class Certification Objections Are Vitiated,  i.e. Actually Impeached By the Withheld Personnel Electronic Evidence

74.  On September 9, 1996, GAO objected to class certification in its Points and Authorities in its pleading entitled, Further Opposition To Alter or Amend Judgement and in Response to Plaintiff's Supplemental Memorandum in Support of Class Certification  ( ECF Docket Entry 249-250).

75.  In its argument, GAO failed to disclose to the Court that it had withheld the very data necessary for class certification, and then used two purported "experts", one a member of GAO's executive committee, Joan Dodaro, and another a private consultant, Dr. Rothmann, to opine that Appellant's expert, Dr. Lurito had failed to consider three necessary data elements.

76.  Both testified (incorrectly) that the plaintiffs data analysis for class certification was flawed because Plaintiffs did not take into consideration:  1) employee qualifications 2) employee eligibility or, 3) whether or not a promotion was sought.

77. These disingenuous opinions were made knowing full well that the withheld Mowbray data fields had fields for employee qualifications, eligibility and also whether a person had applied to a position.

78. These two GAO experts, one a member of the executive committee and the head of Human Resources and the other a hired expert absolutely had to know that so called critical data omitted from consideration by Dr. Lurito did in fact exist, but had been withheld from him as well as the plaintiffs. No clearer attempt to mislead the court is conceivable.

79. GAO/DOJ's second objection to class certification regarded potential inter class conflicts since 2 of the 12 complainants had been, at least once, a member of a promotion and selection panel.  However, additionally as is now known, from the testimony of SES manager Gebecki that the panel structure included a singular SES panel leader who would ultimately decide promotion matters. That is, decisions were always decided by the team leader who was in fact driven by the quota set for him or her.   None of the 12 litigants, nor the proposed class were ever that final decision maker.  This could not happen because this role was limited to SES managers and each was on a leash, described previously as the "control" process.

80. 71 fields were omitted from disclosure.  The substantive evidentiary content of those fields, if produced instead of being denied to exist, would have been used to define all of the necessary discrete classes (or sub classes) necessary to prevail in Plaintiffs' Class Certification Motion.

81. The above factual statement is based upon the strong likelihood that of the about 3,000 affected banded professionals, it is a virtual arithmetic certainty

that for each class or sub class to be certified as similarly situated, with commonality and typicality, at least one of the 12 named class representatives would meet the fifty person numerosity standard as required by Rule 23.

82.  Such a meticulous analysis could be accomplished, with little effort or burden, on the existing data, if the Mowbray data been produced in the form held by the GAO in its undisclosed SAS files (ECF Documents, 436-2 and 436-7).

## IV.  STANDARD OF REVIEW TO BE APPLIED BY THE COURT IN ITS DETERMINATIONS

The familiar standard of requiring the District Court's factual determinations to be shown to be clearly erroneous, and the abuse of discretion standard applicable to errors of standards of law and procedural matters are both clearly applicable here, although likely insufficient to fully redress the harm accumulating for the 30 year term of this case and address corrective actions for the future.

Plenary review is appropriate where, as here, the allegations and reasonable inferences to be drawn from credible facts possibly implicate constitutional due process violations if not violations of the rule of law itself.  Here the indications that at the very least perjured discovery responses to cover-up manipulation of the applicable rules of law by GAO top managers and counsel, both house and DOJ

are evident in the record.  The normal standard of trust therefore for federal

agencies had been stood on its head and a piercing view by the Court is warranted.

These considerations, Appellants' submit are appropriate in light of the

patent evidence of intentional withholding of evidence by the combination of

DOJ/GAO, all utterly ignored by the District Court subsequent to the Honorable

Judge Penn's death.

Also, abuse of the applicable standards of conduct of a Federal Agency, or

here, (two of them acting in concert) as set out in this Circuit by *Segar  v. Smith*,

738 F.2d 1249, 1267 (D.C.Cir.1984) appear to be appropriately applied.  And

perhaps appropriate for expansion, with consideration of more strict standards

applicable where the Court deems criminal activity may be a causative factor or

where the result of a verdict is likely changed should such activity be deemed

applicable.  *Kyles v. Whitley*, 514U.S. 419, 433-34, 115 S.Ct. 1555, 131 L.Ed. 2d

490 (1995) (recognizing that, "regardless of requests [for impeachment in a

criminal context, which may or may not be applicable here], favorable evidence is

material, and constitutional error results from its suppression by the government, '

if there is a reasonable probability that, had the evidence been disclosed to the

defense, the result of the proceeding would have been different' "...; accord,

*Elmore v. Ozmint*, 661 f.3d 783 (4th Cir. 2011).

In addition, in applying the reasonableness standard of *Twombly/Iqbal* to

the facts of this case, unlawful withholding of exculpatory evidence should be

considered, but herein in both a criminal and civil context. To do otherwise

allows the federal agency to set its own standards for what it will do and how it

will act, all contrary to our system of law. Neither of these agencies should be

found to be above the law by the simple expedient of applying the wrong standard.

Regardless of the standard applied, these Appellants submit that they have well

and fully met the applicable standard.

## V.  SUMMARY OF ARGUMENT

This is a fact driven argument. Applicable facts, in the total absence of any

trial or confrontational hearing, are contained in summary form in this brief in

"Statement of the Case and Statement of Facts" herein, the evidence in Appendix

(Apx.) Volume III; but to a much larger extent still undeveloped because no trial

or evidentiary hearing on disputed facts has ever occurred.

This murky state of the facts is alleviated somewhat by "snapshots" of

information received in truncated discovery, published reports and samples of

electronic information received over the thirty + year history of this case.

The Court was misinformed and the most key evidence was

withheld.

Appellants respectfully maintain that the most important matter to be

addressed by this Court is how and why these Appellants were denied their day in

Court. Those facts that are solid and available demonstrate that all three Judges of

the District Court who handled this case during the more than 30 years of this litigation have been duped by the federal agencies' falsities and withholding of valid discoverable probative evidence.  It strongly appears that management of Appellee, has gamed the system for their own financial benefit, to the detriment of the important mission of the Government Office of Accountability, by removing about 7000 of their most experienced analysts from the payroll.  This was done, Appellants allege, for two reasons.

*First*, to remove possible dissenters who were experienced enough and brave enough to actually do their job properly in disenabling fraud waste and abuse, thereby "rocking the corporate boat", thereby creating dissent to government malfunctions, and;

*Second*, to pocket the payroll saving in replacing these higher paid true analysts with younger, wet behind the ears do-nothing replacements.  The excuse used for this self-serving manipulation was a quota system whereby purportedly, minorities and women were beneficiaries, but in reality older minorities and women were also victims of the scheme.

To keep track of the events, without exposing the manipulations and system gaming to the outside world, these Appellants, or the Courts, Appellee, and all of the above, apparently with the advice and consent of the United States Department of Justice, with a variety of representatives over the years, developed and maintained an unannounced and sub-rosa personnel management information

system, with no name, which became effective in October 1989, containing evidence on all relevant personnel transactions beginning with the year 1987. That system, maintained by mathematician William Robert Mowbray "hence herein "Mowbray's System" (based loosely on the "Aires System") furnished reports of whatever nature from a main-frame computer system operating out of Austin Texas, operated by the defense department.

This system, and an in-house system which set yearly quotas for promotion of young persons, purportedly to meet affirmative action goals were the heart of the mechanism whereby these about 7000 analysts were judged deficient in their performance over the applicable 30+ year period of time, regardless of how much fraud, waste and abuse they had previously uncovered.

The failures to produce evidence resulting in misleading of the District Court, the second instance of such manipulation by appellee in this case (commented upon by this Court in its 1991 opinion, see F/N 12 pg. 18 herein) were knowing actions of top management of one federal legislative branch agency, the United States Government Accountability Office (GAO) in concert with its counsel the United States Department of Justice (DOJ), a member of the Executive Branch of Government.

Thereby these agencies have successfully (to date) vitiated the rule of law as applicable to them in this case. GAO management has simply done what it set out to do, regardless of well established rules of law applicable to it.

-56-

The initial trial judge was deceived, duped, by believing the false representations of the Agencies. When the effects of the Appellees manipulations became apparent, at a status call requested by Appellants for that purpose, the Honorable Judge Penn stated he would reconsider the situation by agreeing to reopen discovery. Senior Judge Penn therein represented, subject to conditions which were met, he would reconsider discovery, thereby allowing inquiry into the dishonesties uncovered. But alas, it was too late. The Honorable District Judge John Garret Penn died before the necessarily remedies could be effected as he represented would occur on the record of this case. That action would have unraveled the major misconduct, and allowed corrections to occur, but fate intervened.

Reversal and remand with instructions for a full blown discovery production, followed by trial, is necessary to first bring the actual facts, as distinguished from the GAO's non-candid responses of record, to the attention of the Court and public.

Appellants request that they be made whole, including expert witness fees, attorney's fees and costs.

## VI. ARGUMENT

**A.  The District Court Abused its Power And/or Discretion, And/or Plainly Erred in Factual Determinations in the Face of Demonstrated Fraud upon the Court; by Ordering Plaintiffs to Eliminate Pattern and Practice Claims per *Teamsters;* and Class Action Claims from Their 5th, Amended Complaint, and Thereafter Dismissing the 6th, Amended Complaint for Failure to State a Claim.**

-57-

Plaintiffs herein have alleged a pervasive, cunning, continuing, and invidious pattern and practice of age discrimination for the 30 years of this complaint.   Plaintiffs adopted and continue to rely upon the theory of *Teamsters v. United States*, 431 U.S. 324 (1977).  Under *Teamsters, supra* and its progeny, the first order of business for the District Court is to consider and allow discovery of evidence from which the invidious pattern and practice is observed.

However, in this case the process was backwards.  The District Court ordered discovery for class certification (Doc. # 51, 1991) as the first and *only* order of business contrary to the United States Supreme Court teachings in *Teamsters.  Teamsters*,  establishes the burden shifting principle as the first order of business.  Plaintiffs must demonstrate a prima facie case showing the discriminatory pattern alleged thereby shifting the "Burden of Proceeding" to the defendant.

No accepted standard of review was applied to this case regarding the burden of proceeding with discovery incident to the proof of the merits of the case or class certification.  Neither  *McDonnell Douglas Corp. v. Green*[23], nor the alternate theory of *Teamsters*.

The newly assigned District Magistrate Judge, and the District Judge, failed to appreciate the gravity of the false information placed into the record by the colluding federal agencies.  Indeed, the District Judge in his opening remarks

---

[23]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

-58-

upon being assigned to this case stated quite candidly, that he was not going to revisit any pending motions which were all summarily denied, and but would consider granting new discovery.  But additional discovery was never granted.

The ultimate decision of the District Court Magistrate, was to rule on the existing incomplete and incorrect record, after first declining to proceed with the only evidentiary hearing ever scheduled in the case, and then ruling that there was "no nexus" between the discovery sought and any matter before the Court.

Upon appeal to the District Court, although the Court struck all of the Magistrate Judge's findings, it proceeded to rule upon the record after arbitrarily determining, again without any evidentiary hearing, that plaintiffs' pattern and practice claims were unsupported (of course they were unsupported, in recent years, because all of the evidence had been falsely denied to exist, and additional discovery was not allowed). The Sixth Amended Complaint was summarily dismissed.

The essence of that decision is that the District Court perceived, also erroneously, that the actions of the Plaintiffs were in defiance of the Court's Orders.  These actions of the District Court thereby transformed a statutory collective or class action to a series of unprovable individual claims resulting, the District Court ruled, in a finding of a non-viable Sixth Amended Complaint.

These actions violate due process, and represent both an abuse of discretion of the District Judge, and clearly erroneous factual determinations.  The final decisions of the District Judge amount to acceptance of the frauds upon the Court

-59-

itself.  That factual conclusion is made clear and unequivocal by the detailed impeachment evidence herein (all gathered with no opportunity for a trial or hearing) but nevertheless appearing of record herein.  Details of voluminous testimony, plus Transcripts and Transcript Exhibits are contained in bulky documents representing computer print-outs.  The details of this evidentiary materials remains in the record and supports all of the allegations of this case.

71 relevant items of withheld electronic personnel evidence exist (Testimony Mowbray, for each putative class member.  Such evidentiary information exists, on information and belief, for each employee relevant to this class action.  Mowbray testified as to the details of the existing "databases" he maintained, describing details of each field of each document previously denied to exist and unproduced by GAO.  That withheld evidence is of the essence of this case, and remains available to demonstrate the violations of the age discrimination in employment act as alleged by these Appellants in their final complaint (the Sixth Amended Complaint) .

For these reasons this case should be reversed and remanded with instructions to enter partial summary judgment in favor of the Class of Appellants herein, with instructions to Order Computation of damages and remedial measures preventing reoccurrence of the violations of law extant herein.

**B. Impeachment Evidence, (Appendix Volume III, 3 Deposition Transcripts, Exhibits, Page Locations at ECF 424, 436, Oversized Exhibits, And Evidentiary Attachments to Plaintiffs Motion to Certify the Class, November**

**9th, 2000) Refute Any Rational or Reasonable Basis for the District Court's Stated Reasons for Dismissal of Class Pattern and Practice and Class Claims:**

**(1) As late as March 10, 2005, at a status hearing on the subject of Appellee's withholding of evidence DOJ counsel continued non-candid statements to the District Court misled the Court as follows:**

DOJ Counsel failed to inform the Court as was her duty, that the existence of two (relatively) newly discovered management information systems (containing relevant and material probative evidence on the issues of this case) had been withheld for nearly 20 years by GAO.  This occurred during Set I discovery (Responses filed with the District Court in October, 1989, (ECF 424-1, Set One Responses to Interrogatories. Pages 1-43).

Both management systems existed at that time, and together those systems and electronic data affirmatively denied to exist contained all evidence necessary to prove all elements of Appellant/Plaintiffs pattern and practice case of invidious age discrimination, as well as entitlement to class treatment of those claims namely:

a.  The withheld evidence represented documentary and electronic evidence of a pattern of favoritism for much younger professionals which had existed at GAO for the duration of this case (since 1987).  (Two Bob Mowbray Depositions and one Gebicke Deposition) with printed exemplars of actual evidentiary data ).

b.  That GAO/DOJ counsel and top management well knew of the existence of the personnel evidence and that it had been suppressed.  Mowbray testified at

-61-

his second deposition that there had been wide dissemination of his various personnel data-base reports to upper management staff during the time very time the evidence was being suppressed.  That dissemination included personnel selection panel members and the PAB General Counsel (Mowbray Second Deposition (2008) (ECF 436-7, detailed in pages 25-28, 92, L 1 ).

    c. That suppressed personnel data would have provided, if not suppressed, that out of the several thousand similarly situated professional staff at GAO during all parts of the relevant period of time, a clear mathematical similarity i.e. "match" existed for commonality of claims and typicality of situation as between each Appellant/Plaintiff/Class representative and (at least) several hundred putative class members.

    d. This clear and unequivocal evidence is contained in the existing computerized fields (existing in good form, but suppressed since October, 1989) Apx. ___,Mowbray Second Deposition (ECF 436-7).

    e. Thereby, the factual defense used by GAO in its opposition to Class Certification, and in opposition to Appellants' requests for a an evidentiary hearing on alleged suppression of evidence was nevertheless false, contrived and a fraud upon the District Court and these Appellants when stated, and at all times thereafter when not corrected by supplementation of discovery, as required by F.R.Civ.P. 26(e)(1)(A).   Mowbray's belated testimony was directly to the contrary.  He testified that all such information stored (in the withheld files) could be produced in a matter of minutes as requested by management officials.

f.  Because of the quality of the documentary deposition exhibits and deposition testimony (Both Mowbray Depositions with Exhibits), at all relevant times GAO/DOJ well knew they were misleading the District Court as to the non-existence of evidence which was of the essence of this case.

**(2) Undisputable Documentary Evidence and Unimpeachable Testimony Apx. Vol. III, Even without a Trial or Hearing, Demonstrate a Duping of the Court by a Conspiracy of Federal Agencies and Attorneys in Violation of the Policy of the United States Expressed in Applicable Civil Rights Law 29 U.S.C., § 633a et Seq (ADEA);**

The clear policy of GAO was to discriminate based upon age as a determining factor.  Top management did so using as tools an enforced quota system for selection and promotion which (although withheld as produced evidence) is nevertheless still readily accessible and accurately measured from the employee transactional and profile evidence newly discovered to exist but withheld by unlawful actions by Appellee.

That first sub-rosa undisclosed system and associated evidence was used as a tool for management analysis, enforcement and control of an unlawful (discriminatory) selection process.  The suppressed evidence is records of actually who was selected and who was not, and for what reasons.  All of the evidence thereof was and is still contained in the undisclosed and withheld Mowbray employee database system files  GAO failed to disclose the existence of this system in its response to Interrogatory # 11 (or thereafter.

The <u>second</u> suppressed system, for which identification was also requested but suppressed in GAO's response to Set I, Interrogatory # 11, was a quota system over selections for promotions.  That management information system  had the operative effect of barring all eligibles who were over the age upwards of 43 years of age from selection for upward mobility (Tr., Gebicke; Arnold Jones; (Management reports of adherence to quotas by SES members in application for their renewal of SES contracts at the end of each fiscal year.  (procedure applicable to all fiscal years of this case-30 years of undisclosed written reports still remaining unproduced in discovery in Gebicke's desk drawer, as of the date of the hearing on March 10, 2005).

(3) Apx. Vol. IV, is a Compilation and Excerpts of Statements of GAO's dissembling on the Subject of Its Suppression of Evidence:

**C. The District Court Abused its Discretion in Denying Any Confrontational Hearing to Determine Clearly Disputed Facts:**

Initially, it is difficult if not impossible to imagine how a legal proceeding can "remain live" for more than 30 years, *with highly disputed facts including allegations of fraud upon the District Court*, without *some* determination by the Court requiring a trial or evidentiary hearing.  But nevertheless that is what occurred here.  Given the number of requests for hearings, objections and attempts to get meaningful discovery, that fault cannot reasonably be laid upon Appellant's shoulders (See table I, Decisions under review).

The false answers, failures to produce the evidence withheld, were filed in October 1989, (GAO Set I Responses to Discovery, Apx. Vol. IV, pgs.___).  This dishonest act set the course for GAO's management to dissemble to protect their own previous dishonesty in discovery from that point forward.  How GAO convinced all of its counsel, both in house and "private" (DOJ) to undertake that dishonest approach, is yet to be discovered, because as stated previously, no discovery has been allowed since the process of deception was discovered, in 2001.  But Apx. Vol. III, that impeachment evidence demonstrates that it did in fact occur.

Accordingly, the District Court abused its discretion by failing to maintain an unbiased view of the facts, no matter how egregious, amounting to a denial of these Appellants day in Court-after 30 years of waiting for a resolution of their factual well supported claims (as is now proven by Apx. Vol III, parts I and II).

## VII.  CONCLUSION

For all of the foregoing reasons, the Honorable Court should reverse the dismissal of the District Court, find that the proceedings of this case were fatally flawed by the bad-faith withholding of relevant and material evidence sufficiently important to taint the results of all decisions of the District Court.  This Court should find an adverse inference of discrimination and a finding of liability for partial summary judgment.

Denial of Class-Certification should be reversed and remanded for calculation of damages to each class representative and each member of the putative class or classes as computed in accordance with latest statistical principals.  Any disagreement of methodology shall be resolved by conferences between the parties with all costs paid by the GAO.  Instructions upon remand should require the District Court to enter Partial Summary Judgement for liability with the full extent of damages to be determined for each class member.

Sanctions should be assessed with full compensation for costs, including attorney's fees and experts.  Appellants request timely partial recompense on a forthwith estimated reasonable basis, to offset the cumulative damages and costs incurred by the bad-faith delays over 30 years in an amount as established by this Court considered to be fair and reasonable pending calculation of the actual damages for the about 1500 injured members of the class.

These preliminary figures could easily be determined within one month of the Judgement rendered by this Court by using existing GAO systems and readily available electronic data on each similarly situated person (all members of the putative class).   The instructions to Defendants should require forthwith disclosure of all of the withheld materials in good and edited statistical database form for all relevant years, at GAO's expense. Those results should be submitted along with the full database for review by the plaintiffs prior to submission to the District Court for entry of final judgment.    The Court's instructions should also require a five year period of continuing jurisdiction by the District Court to insure

that these abuses do not reoccur, and such other relief as this Court deems just and

proper.

## CERTIFICATE OF COMPLIANCE PURSUANT
## TO COURT RULE 28.1 (e)(2) and (3).

I hereby certify that this brief conforms to the type-volume limitations specified in Rule 32(a)(7)(B)(I).  The page limit of 30 pages is not met but the word count is 13,360 and therefore within the 14,000 limit.

<u>/s/ WTCharlton, 5336</u>

Respectfully submitted,

/s/ WT Charlton, 5336

_____

Walter T. Charlton,
December 16, 2015 D.C. Bar #186940
Counsel for Plaintiffs and the Putative Class
11213 Angus Way, Woodsboro Md. 21798
Telephone-410 571 8764,
email, charltonwt@comcast.net

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of April, 2016, I filed with the ECF System of the Court a revised and corrected copy of Plaintiffs Brief in this Case with the expectation that it would be automatically served upon Appellee's counsel, Peter R. Maier, SAUSA.

WT Charlton 5336

_____